34          SUPREME COURT OF UTAH          [Feb.

Johnson v. Silver King Consol. Mining Co. of Utah, 54 Utah 34.

# JOHNSON v. SILVER KING CONSOL. MINING CO. OF UTAH.

## No. 3270.   Decided February 15, 1919.   (179 Pac., 61.)

1. MASTER AND SERVANT—INJURY TO EMPLOYÉ—ACTION FOR DAMAGES —PROOF. Where there are several or a number of causes that may have brought about employé's injury, for some of which the employer is responsible and for some of which he is not responsible, it is not for the jury to guess between such causes when there is no satisfactory foundation in the evidence for its conclusion. (Page 41.)

2. MASTER AND SERVANT—SAFE PLACE TO WORK—MINES—DUTY OF EMPLOYÉ. Mine operator's duty to employé working in tunnel in which there was a main and side track was to have tracks so far apart that car passing on main track would not strike empty car on side track, jerking it out of position, and knocking employé against wall of tunnel. (Page 42.)

3. MASTER AND SERVANT—INJURY TO EMPLOYÉ—ACCIDENT IN MINE TUNNEL—SAFE PLACE TO WORK. Where main and side tracks in mine tunnel were so close together that from tilting of track or of car, because of rock falling on track, or by moving of main track under weight of alleged car, or the spreading of the rails of such track, the loaded car would interfere with empty car on side track, jury was justified in holding that mine operator was negligent. (Page 43.)

4. MASTER AND SERVANT—ACCIDENT IN MINE TUNNEL—LIABILITY OF MINE OPERATORS. In action for employé's death in mine tunnel, where negligence relied on was the proximity of side track to main track, causing loaded car on main track to interfere with empty car on side track, knocking deceased employé against the tunnel wall, plaintiffs could recover though interference of the one car with the other may have been caused by any one of different causes, where none of such causes would have produced accident but for mine operator's negligence in having tracks too close together. (Page 43.)

5. NEGLIGENCE—ACTION FOR DAMAGES—DEGREE OF PROOF. Plaintiff in negligence action is required to introduce merely such evidence as will raise a fair presumption of negligence on the part of the defendant and of resulting injury to himself, circumstantial evidence being sufficient. (Page 44.)

6. MASTER AND SERVANT—MINE TUNNEL ACCIDENT—SAFE PLACE TO WORK—JURY QUESTION. In an action for death of employé in mine tunnel after being knocked against wall by empty car standing on side track, struck by loaded car being driven on main track, whether the employer was negligent in laying the

two tracks too close together was a jury question.  (Page 45.)

7.  NEGLIGENCE—JURY QUESTION.   Where the question of negligence is doubtful, it is for the jury.  (Page 45.)

8.  EVIDENCE—DEGREE OF PROOF—INFERENCES.   A jury ordinarily may not infer or presume a particular fact from another fact or series of facts, and make such inferences or presumption the basis of the ultimate fact to be found, or the basis of any other fact which is essential to a verdict in favor of the plaintiff.  (Page 45.)

9.  MASTER AND SERVANT—INJURY TO MINER—SAFE PLACE TO WORK—SUFFICIENCY OF EVIDENCE.   In action for death of employé in mine tunnel from being thrown against wall by empty car on side track, on said car being struck by loaded car on main track, evidence *held* to justify inference that the main and side tracks were laid too close together.  (Page 48.)

10.  APPEAL AND ERROR—TRIAL—GRANTING OF NONSUIT—PERMISSION TO REOPEN CASE—DISCRETION.   Whether plaintiff will be permitted to reopen case after nonsuit has been granted is within the sound legal discretion of the trial court, and such discretion will not be revised in absence of abuse.  (Page 48.)

Appeal from the District Court of Salt Lake County, Third District; *Hon. R. B. Porter,* Judge.

Action by Tilta Johnson, as widow of Stive Johnson, and as guardian ad litem of Annie Johnson and others, against Silver King Consolidated Mining Company of Utah.

Judgment of nonsuit.  Plaintiff appeals.

REVERSED and REMANDED.

*Weber, Olson & Lewis,* of Salt Lake City, for appellant.

*King, Straup, Nibley & Leatherwood* and *Gustin, Gillette & Brayton,* all of Salt Lake City, for respondent.

FRICK, J.

The plaintiff, Tilta Johnson, as the widow of one Stive Johnson, deceased, and as guardian ad litem of Annie, Henry, Sikra, and Ellen Johnson, minor children of the deceased,

brought this action on her own behalf, and on behalf of said minors, to recover damages caused by the death of said Stive Johnson, who, it is alleged in the complaint, was killed through the negligence of the defendant, in whose mine he, at the time of his death, was employed as a miner.

In the complaint, after alleging the place where said deceased was at work, and what he was doing at the time of the accident, and that he, with other employés of the defendant, was at work in a certain tunnel in defendant's mine in which a main track and a switch or side track were laid, on which mine cars were propelled by means of horse power, and after stating that the defendant had negligently failed to provide a safe place for the deceased to work in, the particular acts of negligence are alleged as follows:

"That the defendant carelessly and negligently placed said side track and said main track too near to each other to permit the loaded cars to be drawn forward without the danger of a loaded car catching and interfering with an empty car on the side track, and that on the date herein mentioned, while the said deceased, in the performance of his duties, was standing on the side of the tunnel near said empty cars, the loaded cars were pulled forward on the main track, and, by reason and on account of the said carelessness and negligence of the defendant in placing said tracks too close together, one of the loaded cars interfered with and caught and became fastened to one of the empty cars on the side track, and thereby caused said empty car to be suddenly turned and jerked out of position, and caused one end of said empty car to swing out towards the side of the tunnel, and to strike the deceased, Stive Johnson, and pin his body against the side of said tunnel, and thereby injured him insomuch that he died from said injuries on January 1, 1917."

The defendant filed an answer to said complaint, in which, after admitting the matters of inducement, and that the deceased was in its employ, and that he was injured, it denied all acts of negligence. It also set forth as affirmative defenses assumed risk, contributory negligence, and that the deceased was injured through the negligence of a fellow servant.

In view that the affirmative defenses are not involved on this appeal, no further reference will be made thereto.

A jury was duly impaneled to try the case, and, after the

plaintiffs had produced their evidence and rested, the defendant moved for a nonsuit, which was based upon all the defenses set forth in the answer. The only grounds of the motion which are relevant here, however, are that the evidence does not establish any negligence on the part of the defendant which was the proximate cause of the injury, and that there is no evidence in support of the particular acts of negligence alleged in the complaint, all of which acts we have hereinbefore set forth. The court sustained the motion, and judgment of dismissal was duly entered, from which this appeal is prosecuted.

After the motion for a nonsuit had been granted, plaintiffs, for the reasons hereinafter stated, asked leave to reopen the case to introduce further evidence. The court refused to reopen the case, and plaintiffs excepted to the ruling.

The errors assigned are: (1) That the court erred in granting the motion for a nonsuit; and (2) that it erred in refusing to reopen the case and permit the plaintiffs to introduce additional evidence.

At this point we prefer to insert the following rough sketch showing the main track, the switch track, and the surroundings at the place of the accident.

The evidence produced by the plaintiffs tended to establish the following facts:

The defendant was constructing a tunnel in its mine, which had been driven into the mountain a distance of about 2,000 feet at the time of the accident. On the morning of the accident, at about eight o'clock, the deceased, with six or seven other employés, went to work in said tunnel. The face of the tunnel is at the point marked "F" on the sketch, where three machine men were engaged in drilling blast holes into the face. The main track referred to is marked "B," and the side track is marked "A." The muck or loose rock and dirt which was blasted out of the face of the tunnel was being loaded by the muckers, who were working in the open space in the rear of the point marked "F," and beyond the tracks, into the mine cars, which were used to take the muck to the surface through said tunnel. The track "B" was a permanent track laid on wooden ties, which were laid on the bottom of the tunnel and ballasted. That track was extended as the tunnel proceeded, which was at the rate of about ten linear feet every twenty-four hours. The track "A" was used as a side track, the rails of which were fastened together with three-inch iron strips placed certain distances apart, which were riveted to the bottom or under side of the rails, and after so fastened together the rails were laid on the bottom of the tunnel, and moved forward toward its face from time to time as the work progressed. The testimony is to the effect that the side track was between twenty and thirty feet in length, and was connected with the main track by means of a switch marked "S" on the sketch. The switch was fastened to the ends of the two rails constituting the side track, so that the loose ends of the switch could be carried over and laid onto the rails of the main track as indicated on the sketch. The cars used in the mine were operated as follows: A driver, called the "skinner" by the witnesses, would bring up about six empty cars into the mine with a horse, and just before he would arrive at the point of the switch he would unhitch his horse from the empty cars, and by hand shunt them over the switch onto the side track "A." At the time he would arrive

with a string of six empty cars that number of cars would usually be loaded and be standing on the main track "B." The skinner would then hitch his horse to the string of loaded cars, and after throwing the switch back, so as to leave it approximately as indicated by the broken lines on the sketch, he would proceed to take the loaded cars to the surface, unload them, and return with them as before stated. While the skinner was taking a string of loaded cars to the surface, the muckers, who were working in the rear of the point "F," would load the empty cars with the muck, and, when loaded, would turn and shunt them on what is called a sheet-iron turntable onto the main track, where they would be hitched onto by the skinner, as before stated. The distance between the rails on both the main track and on the side track was eighteen inches; the distance between the inner rails of the main track and the side track was by one witness said to be eight and one-half or nine inches, and by another eleven to twelve inches; and the distance from the outer rails of the main track and the side track to the walls of the tunnel, indicated by the two outer lines on the plat, was stated to be from thirteen to fourteen inches, while the width of the tunnel was stated to be "between six and seven feet." On cross-examination the witness said that the "average" width was perhaps "between six and one-half and seven feet." The tread, or top, of the rails was three-fourths of an inch wide. The cars were twenty-eight inches wide. A few of them were stated as being an inch and one-half wider than that. The testimony is that they were forty-two inches high and forty-nine to fifty-one inches in length, and weighed about 700 pounds when empty. On the morning of the accident the machinemen and muckers were engaged at and near the face of the tunnel, as before stated. The deceased was working at or near the point marked "X" on the sketch, digging a drain ditch. In digging the ditch he would shove an empty car down over the switch onto the main track, and when loaded shunt it back—that is toward the face of the tunnel on the main track beyond the switch—where it would become the head car of the train of loaded cars going out. On the morn-

ing of the accident, and just before it occurred, the skinner had brought in a string of empty cars and had shoved them over the switch onto the side track. The switch was then turned from the main track to permit the loaded cars to pass by on that track. The evidence is conclusive that the loaded cars could not pass over the main track until after the switch was turned therefrom. As the skinner would proceed to take a train of loaded cars past the switch and the point where the deceased was working one of the empty cars was pushed forward on the side track, and was forced onto or over the end of the switch, and the end of the car was turned toward the side of the tunnel, and struck the deceased and forced him against the wall of the tunnel, and crushed him so that he died as stated in the complaint. The skinner stopped the loaded train apparently as soon as the empty car had struck the deceased. This is inferred from the fact that the loaded train did not pass that point. There is no direct or positive evidence of what caused the empty car which struck and crushed the deceased to move forward and to turn with its end toward him. It is inferred, however, that in passing along one of the loaded cars came in contact with an empty car, and forced it along, and when it reached the switch by the forward momentum of the loaded cars it was forced off the switch, and was turned and crushed the deceased. Defendant's counsel concede that the inference that the loaded cars must have come in contact with the empty cars standing on the side track is a proper inference to be deduced from the facts and circumstances. May it, however, also be inferred from the facts and circumstances, that the side track was negligently laid so close to the main track that the cars would not clear each other in passing? The side track had been laid down the night preceding the accident by the night shift, as was usually done. It seems there was no witness who saw the car strike the deceased, but he was seen by the foreman immediately after he was struck, and before the train of loaded cars had entirely passed by the end of the switch. One of the witnesses testified that when he arrived at the scene from his place of work at the face of the

tunnel, from whence he was called by the foreman, all the cars, both loaded and empty, were on the tracks except the empty one which had turned and struck the deceased, and that one of the loaded cars was within an inch of the empty car which had been forced against the deceased. It also appeared that two loaded trains had been taken out on the morning of the accident, and before it happened, without the cars interfering and that the cars had interfered once or twice some time before the accident occurred. The evidence also showed that the tunnel was not lighted except by small carbide lights which were carried by each workman.

The district court, it seems, sustained the motion for nonsuit upon two grounds: (1) That the plaintiff's evidence failed to establish the real cause of the accident, but left it to conjecture; and (2) which, stating it in the court's own language, is that "to submit this case to the jury would mean that they might find a verdict based upon an inference upon an inference. In other words, they might infer that the cars might hit each other, and then that they did catch, and that the deceased was thereby killed. A verdict based upon such evidence would be mere conjecture." In addition to the foregoing grounds, counsel for the defendant also insist that there is no evidence in support of the particular acts of negligence alleged in the complaint, namely, that the main and side tracks were laid in such close proximity as not to permit the cars to clear in passing. If, therefore, any one of the foregoing conclusions is sound, then, as a matter of law, the judgment must be affirmed.

While the foregoing propositions blend or overlap at some points, we shall, nevertheless, try to treat them separately as far as possible.

It is insisted that this case falls within the principle laid down by the Supreme Court of the United States in the case of *Patton* v. *Texas & Pac. R. Co.*, 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361, where it is held that the happening of the accident "carries with it no presumption of negligence on the part of the employer"; and, further, that where there are several or a number of causes that "may have

brought about the injury, for some of which the employer is responsible, and for some of which he is not, it is not for the jury to guess between those half a dozen causes, and find that the negligence of the employer was the real cause *when there is no satisfactory foundation in the testimony for that conclusion.*" (Italics ours.) No doubt such is the law. The question, however, always is whether the foregoing doctrine is applicable to the particular facts of the case before the court. It is contended that the doctrine is applicable here because the interference of the cars may have been brought about by a number of causes: (1) By the tilting of the track; (2) by a rock falling on the track and causing the car to tilt; (3) by the moving of the main track under the weight of the loaded cars; and (4) by the spreading of the rails. There are other causes assumed by counsel, but they either are included within the foregoing or have no application, and hence it is needless to mention them. Counsel contend that either one or all of the foregoing causes was just as likely to have caused the cars to interfere in passing as that the interference was caused by the tracks being laid too close together to permit the cars to pass without interference. It seems to us, however, that all of the causes enumerated by counsel are included within the allegations of the complaint that the tracks were laid too close together to permit the cars to pass each other without interference. In laying the tracks ordinary prudence required that the things enumerated be kept in mind, since according to the contentions of defendant's counsel, those things were liable to occur at any time.

If, therefore, any one or all of these things might occur at any time, and to the ordinary mind it seems that such was the case, it was the duty of the defendant to exercise ordinary care at least to guard against them by laying the tracks so that the cars would pass without interference notwithstanding the happening of those usual and ordinary things. It must be kept in mind that plaintiffs merely alleged that the tracks were negligently placed so close together that the cars could not pass without interfering. The

specific thing which caused the cars to interfere was not alleged, and in all probability was not known to the plaintiffs. That, however, was not the essential thing so long as the cause was natural, usual, and ordinary, and which could and should have been obviated in laying the tracks.

If, therefore, the tracks were laid so close together that the cars would interfere if any one of the things enumerated by counsel would occur, and these things, as counsel suggest, might occur in the ordinary and usual prosecution of the work, then we cannot say as a matter of law that the jury would not be justified in finding that the tracks were laid too close together, and that in view of all the facts and circumstances, the defendant was negligent in thus laying them.

It is manifest, therefore, that the facts of this case do not bring it within the doctrine contended for, (1) because the evidence is such that the jury could find a "satisfactory foundation" for the real cause of the injury; and (2) because there is no foundation in the evidence, directly or otherwise, that any one of the different things suggested by counsel occurred, but all of them are merely conjectures, or assumed without any basis therefor in the evidence. It is no more proper to conjecture causes for the purpose of hiding or obscuring the real cause than it is to conjecture what the real cause of the injury was among a multiplicity of causes. The question, therefore, is, was there any substantial evidence produced by the plaintiffs from which the jury could fairly infer the fact that the tracks were laid too close together?

Counsel insist that there is no direct evidence respecting that matter, and that there is no sufficient inferential or circumstantial evidence authorizing the jury to find that the defendant was negligent in laying the tracks as they were laid. We have stated the evidence in that regard. The evidence is to the effect that the tunnel was "between six and seven" feet in width. Assuming it to have been six and one-half feet wide, and in view of the evidence, the jury could have assumed it to be a little less, that width, giving it in inches, would make the tunnel seventy-eight inches wide. As-

suming that the spaces between the outer rails of the tracks and the walls of the tunnel were fourteen inches each, this would make twenty-eight inches for those two spaces. The space between the rails of each track was eighteen inches, making thirty-six inches for those two spaces. The width of the tread, or top, of each of the four rails of tracks was three-quarters of an inch making three inches. Adding twenty-eight, plus thirty-six, plus three inches, and subtracting that from seventy-eight inches the width of the tunnel, leaves a space of eleven inches between the tracks. The foregoing distances were, however, mere approximations by the witnesses. The testimony also showed that the space between the two tracks did not exceed nine inches, and the jury could have so found. The cars, as we have seen, were twenty-eight inches wide, and a few of them perhaps an inch or an inch and one-half wider than that. The width of the main track, including the rails, was nineteen and one-half inches. If we subtract nineteen and one-half inches from twenty-eight it leaves eight and one-half inches. A twenty-eight inch car would thus extend outside of the rails four and one-fourth inches on each side, while one of the wider cars would extend approximately five inches outside the rails. Assuming those figures to be correct, and, according to the evidence, the jury were justified in assuming them to be substantially so, there was very little space left between the passing cars, and if two of the wider cars were required to pass each other it is easy to conceive why they might come in contact. This might well explain why there was no interference when the other two strings of loaded cars were taken out before the accident on the morning of the accident. That may have been entirely due to the fact that two of the wider cars did not come in juxtaposition. The controlling question, therefore, is, what were plaintiffs required to prove in order to make out a prima facie case for the jury?

The writer is not aware of any better statement of the law in that regard than is contained in 1 Shear. & Redf. Neg. (Sixth Ed.) section 58, where the author states the rule in the following language:

"The plaintiff is not bound to prove more than enough to raise a fair presumption of negligence on the part of the defendant and of resulting injury to himself. Having done this, he is entitled to recover, unless the defendant produces evidence sufficient to rebut this presumption. It has sometimes been held not sufficient for the plaintiff to establish a probability of the defendant's fault; but this is going too far. If the facts proved make it probable that the defendant violated his duty, it is for the jury to decide whether he did so or not. To hold otherwise would be to deny the value of circumstantial evidence. As already stated, the plaintiff is not bound to prove his case beyond a reasonable doubt; and, although the facts shown must be more consistent with the negligence of the defendant than with the absence of it, they need not be inconsistent with any other hypothesis. It is well settled that evidence of negligence need not be direct and positive. Circumstantial evidence is sufficient. In the nature of the case, the plaintiff must labor under difficulties in proving the fact of negligence; and as that fact itself is always a relative one, it is susceptible of proof by evidence of circumstances bearing more or less directly upon the fact of negligence, a kind of evidence which might not be satisfactory in other classes of cases open to clearer proof. This is on the general principle of the law of evidence which holds that to be sufficient or satisfactory evidence which satisfies an unprejudiced mind."

A careful reading of the foregoing statement of the law, which emanates from two of the ablest, as well as the most careful, text-writers upon the subject, will, we think, convince any one that the facts and circumstances of this case are not such that a court would be justified to declare as matter of law that there is no substantial evidence upon which a jury could base a finding of negligence on the part of the defendant in laying the two tracks so close together.

At most, the question of negligence may be said to be doubtful; and, where such is the case, it has become elementary in this jurisdiction, as well as in many others, that the question is for the jury.

It is, however, also insisted—and, as we have seen, that was one of the grounds upon which the district court sustained the motion for nonsuit—that in order to find negligence the jury must base an inference or presumption on an inference or presumption. No rule of law is, we

46          SUPREME COURT OF UTAH          [Feb.

Johnson v. Silver King Consol. Mining Co. of Utah, 54 Utah 34.

think, better settled in our jurisprudence than that a jury, ordinarily, may not infer or presume a particular fact from another fact or series of facts, and make such inference or presumption the basis of the ultimate fact to be found, or the basis of any other fact which is essential to a verdict in favor of the plaintiff. As is well said by the Supreme Court of the United States in *United States* v. *Ross*, 92 U. S. 281, 23 L. Ed. 707, "Whenever circumstantial evidence is relied upon to prove a fact, the circumstances must be proved, and not themselves presumed." See, also, *Cunard S. S. Co.* v. *Kelley*, 126 Fed. 610, 61 C. C. A. 532, in which case the doctrine that an inference or presumption may not be based upon another inference or presumption is illustrated and applied. The rule and its limitations are perhaps as well and as clearly stated in 1 Jones, Com. Ev. section 104, as they well can be. In closing the discussion upon the subject of presumptions, the author there says:

"But there are certain rules of general application which may well form the closing section of this chapter. Perhaps the most important is that presumptions must be based on facts, and not upon inferences or upon other presumptions. * * * Nowhere is the presumption held to be a substitute for proof of an independent and material fact. The marshaling of various circumstances with each other and with the fact to be proved must not be confused with the idea that the inference as to each is interdependent. There must be the connection referred to between them. Once the facts are established from which presumptions may be legitimately drawn, it is the province of the jury to deduce the presumption or inference of fact. If the connection is too remote or uncertain, it is the duty of the court either to exclude the testimony from which the presumption is sought to be deduced, or to instruct the jury that the evidence affords no proper foundation for any presumption."

The circumstances out of which the accident arose in this case are all in evidence, and the only question is whether, considering them all together, they are sufficient to afford a "satisfactory foundation," as Mr. Justice Brewer puts it, for a finding respecting the cause of the accident and injury. Defendant's counsel frankly concede that the evidence as it now stands may justify a finding that the tracks were so close together as not to permit the cars to pass without interference; but they insist that, in view that no one saw the car

strike the deceased, it may not also be inferred that the collision or interference of the cars was the cause of the injury and subsequent death of the deceased. In order to deduce that inference, they assert, it is necessary to base an inference upon an inference, which, in view of the rule stated, may not be done. We cannot agree with counsel in that conclusion. As we view it, in order to arrive at such a conclusion the facts and circumstances disclosed by the evidence must be broken up and segregated into groups. That may not be done. The facts and circumstances must be considered as a whole, and cannot be segregated into groups or parts for the purpose of deducing inferences. There is, however, direct evidence that the deceased was struck and crushed by an empty car. True, counsel for defendant at the hearing suggested that the empty car, in view of its weight, might, by reason of that fact, have moved forward on the side track and crushed the deceased. That is not a legitimate inference in view of all the facts and circumstances. There is no fact or circumstance from which such an inference may be legitimately deduced. Moreover, it is not a legitimate inference that if the empty car by its own momentum had run over the switch it would have turned with its end toward the wall of the tunnel and crushed the deceased. The legitimate inference, in view of the natural forces, of which both courts and juries take notice, is that the car, when it struck the ground at the end of the switch, would have its forward momentum checked, and, if, being forced forward by the moving train of loaded cars, the rear end of the empty car would move so as to turn the car, and in doing that the end thereof would strike and crush the deceased. This is not a case where an individual is found injured or dead, and the cause of the injury must be entirely deduced from some isolated fact or circumstance. This is a case where the immediate cause of the injury is established beyond all reasonable doubt, and hence the only real inference that must be deduced from all the facts and circumstances is, what caused the car on the switch track to move forward? We assert with the utmost confidence that the evidence is such that the jury would be

authorized to infer that that was caused by the loaded cars, and in moving forward, in interfering with and striking an empty car and propelling it forward, with the result before stated.

Now, in view that it is conceded that the empty cars were standing still on the switch track, and the loaded cars were being propelled forward on the main track, and the evidence that the cars came in contact being practically conclusive, the inference deducible from all the facts and circumstances, that the tracks were laid too close to permit the cars to pass without interference, while not conclusive, is, nevertheless, highly probable and persuasive.

Counsel's contention, therefore, cannot prevail.

What we have already said also disposes of the contention that there is no evidence to support the particular acts of negligence alleged in the complaint.

While the case is a close one, and may be called a borderline case, yet, in view of the facts and circumstances which are disclosed by the evidence as it now stands, all of which must be considered in the light most favorable to the plaintiffs, the case is not so clear upon the facts as to authorize us to declare as matter of law that negligence was not established, nor that there is no evidence tending to establish the alleged negligence, nor that the negligence was not the proximate cause of the injury.

We have given this case very careful consideration, and we are all of one mind that the court erred in granting the motion for nonsuit.

It is also insisted on the part of plaintiffs that the district court erred in refusing their request to reopen the case after the motion for nonsuit had been granted. While we might have felt inclined to give the plaintiffs leave to reopen the case, yet, in view that that matter rested within the sound legal discretion of the trial court, and nothing appearing in the record from which we are justified to conclude that the court abused that discretion, this contention must fail.

This case, by agreement of counsel, was submitted to the

four justices joining in this opinion, Mr. Justice WEBER being disqualified for the reason that he was of counsel in the court below.

For the reasons stated the judgment should be, and it accordingly is, reversed; and the cause is remanded to the district court of Salt Lake county, with directions to grant the plaintiffs a new trial, costs on the appeal to be paid by defendant.

CORFMAN, C. J., and GIDEON and THURMAN, JJ., concur.

WEBER, J., being disqualified, did not participate.