374 P.2d 311

'Roy James BARNHILL, d/b/a Zions Furniture Upholstering, Plaintiff and Appellant,

v.

'YOUNG ELECTRIC SIGN COMPANY, a corporation, Defendant and Respondent.

No. 9591.

Supreme Court of Utah.

Sept. 7, 1962.

Horace J. Knowlton, Salt Lake City, for appellant.

Ray, Quinney & Nebeker, Stephen B. Nebeker, Salt Lake City, for respondent.

McDONOUGH, Justice.

During the early morning of October 30, 1959, the business establishment of Roy James Barnhill was totally destroyed by fire. Suit was brought against Young Electric Sign Company, a corporation responsible for the installation and maintenance of a large electric sign on top of the building. After the presentation of plaintiff's case the court granted defendant's motion for a directed verdict on the ground plaintiff had not shown sufficient evidence of causation or negligence to justify sub-

mission of the case to a jury. From an order dismissing plaintiff's complaint, he appeals.

The sole question is whether plaintiff presented sufficient evidence to enable him to go to the jury.

Plaintiff contends that his presentation of circumstantial evidence that the fire was caused by defendant's sign entitles him to go to the jury under the res ipsa loquitur doctrine.

As we held in Wightman v. Mountain Fuel Supply Co.,[1] this doctrine requires the concurrence of three elements: "1) That the accident was of a kind which, in the ordinary course of events, would not have happened had due care been observed; 2) That it happened irrespective of any participation by the plaintiff; and 3) That the cause thereof was something under the management or control of the defendant, or for which it is responsible."

When these elements exist, "the thing will speak for itself", that is, a strong inference that defendant was negligent will arise justifying submission of the case to the finder of fact for the determination of this issue. It is clear, however, that the doctrine cannot be invoked to show negligence until "the initial fact, namely what thing or instrumentality caused the accident has been shown * * * [T]hen and not before, an inference arises that the injury or damage occurred by reason of the negligence of the party who had * * * [the instrumentality] under his exclusive control."[2]

Did the plaintiff trace the cause of the fire to an instrument for which the defendant was responsible so that the cause of the fire was not left to conjecture?

It is conceded that defendant was responsible for the operation and maintenance of the electric sign mounted on the building. Crucial to plaintiff's case is whether the sign was the cause of the fire. With respect to this issue evidence was presented which we outline as follows:

1) The day before the fire Young Electric Sign had men working on the sign. One of plaintiff's employees testified that "they were taking things up there all day, changing things * * * and I am quite sure they were repairing the transformers." Another employee stated, "At one time * * * this gentleman [Young's repairman] had something in his arms, it looked like a transformer. I am no expert on

1. 5 Utah 2d 373, 302 P.2d 471 (1956).
2. Emigh v. Andrews, 164 Kan. 732, 191 P.2d 901, 903 (1948); Jackson v. Colston, 116 Utah 295, 209 P.2d 566; Johnson v. Silver King Consol. Min. Co., 54 Utah 34, 179 P. 61 (1919); Busse v. Murray Meat & Livestock Co., 45 Utah 596, 147 P. 626 (1915); James v. Robertson, 39 Utah 414, 177 P. 1068 (1911); 1 Shearman & Redfield, Negligence, Sec. 56 at 153-54 (rev. ed. 1941).

transformers, it was an object he had in his hands."

The sign was equipped with several transformers which boosted the 110 volt input to as high as 16,000 volts.

2) A strong windstorm was in progress the night of the fire. A truck driver testified that he saw nothing unusual when he drove past the building at 2:15 to 2:35 a. m. He did not remember whether the sign was on or off. A bus driver who passed the building at about 2:45 testified that "there was a disturbance upon the sign, more like a flash in that direction * *," and that, "there was a fire on top of the building." He did not know whether or not the fire was directly underneath the sign. A journeyman lineman testified the sign was off when he noticed the fire between 3:30 and 4:00 a. m. He then proceeded to the site for the purpose of de-energizing the line servicing the building. At that time the whole building was in flames. Another witness, a nightman for a nearby service station, testified that he turned in the alarm when he observed the fire inside the building between 3:00 and 4:00 a. m. He further stated that the sign had been turned off around midnight.

3) The day following the fire, plaintiff and several of his employees noticed upon their arrival at the scene that a charred metal object (which some employees thought looked like a transformer) hung suspended by two wires or cables from the bottom of the sign. Shortly thereafter this object was removed by employees of Young Electric Sign.

4) There is further evidence in the record that two of plaintiff's employees used smoking tobacco while on the job; that the building was fully stocked with flammable materials used in the upholstery business; that the building was equipped with a stove and gas furnace and that severe east winds had blown out some of the windows three times before.

Plaintiff contends that from the foregoing evidence a jury could find that during the windstorm a transformer or wire fell upon the roof before the sign was turned off there kindling a fire from a spark or electrical arc in the material composing the roof. He reasons further that since the material on the roof was somewhat fire resistant, the fire may have smoldered and burned for two and one-half to three hours until it flamed up, came through the roof, and was discovered. From this plaintiff would draw an inference of negligence: i. e., a failure of Young Electric Sign to properly inspect and secure parts of the sign to withstand windstorms.

Defendant points out 1) that the evidence showed the sign was turned off about three hours before the fire was discovered

and that there were many other possible causes of the fire such as the gas furnace, the stove, cigarette butts left smoldering in the upholstering materials and other conjectural causes produced by the windstorm; 2) that plaintiff produced no testimony to show when the part fell from the sign or if, when it fell, it carried electricity; 3) that it is as likely as not that the part fell after the electricity was off and after the sign was damaged by the fire.

Viewing the evidence and every inference therefrom in a light most favorable to the plaintiff, nevertheless we agree with the trial court that the plaintiff failed to make out a case for the jury.

It is essential that the person charged with negligence has actually caused the plaintiff's damage or that an instrument in his control has caused it. The rule is clearly stated by Prosser: "In any case where it is clear that it is at least equally probable that the negligence was that of another, the court must instruct the jury that the plaintiff has not proved his case. The injury must be traced to a specific instrumentality or cause for which defendant was responsible * * *."[3]

We conclude that from the circumstances of this accident it is by no means clear that the fire was caused by the sign or that defendant was guilty of any fault. The

3. Prosser, Torts, Sec. 42 at 204–05 (2d ed. 1955).

trial court properly refused to allow the jury to speculate on this issue.

Affirmed. Costs to respondent.

WADE, C. J., and HENRIOD, CALLISTER and CROCKETT, JJ., concur.