440 P.2d 872 (1968)
21 Utah 2d 73
Elden R. TALBOT, Plaintiff and Appellant,
v.
DR. W.H. GROVES' LATTER-DAY SAINTS HOSPITAL, INC., and the Estate of Burke M. Snow, M.D., By and Through its Administrators, Zions First National Bank, Melba B. Smith, Pamela B. Snow and Phylis K. Snow, and Grant M. Reeder, M.D., Defendants and Respondents.
No. 10970.
Supreme Court of Utah.
May 2, 1968.
Joseph S. Knowlton, of Wilkinson, Wilkinson & Knowlton, Salt Lake City, for appellant.
*873 Albert R. Bowen, John H. Snow, Jay E. Jensen, Salt Lake City, for respondents.
TUCKETT, Justice:
The plaintiff, Elden R. Talbot, filed this action against the defendants wherein he seeks to recover for an injury suffered by him while undergoing treatment of his lower back.
Talbot, a 39-year-old carpenter, suffered an injury to his lower back in an industrial accident in October 1963. Talbot was admitted to the defendant hospital for treatment of his back injury, and on January 9, 1966, Dr. Burke M. Snow operated on his back to repair a herniated disc with a spinal fusion. The anesthetic was administered by Dr. Grant M. Reeder, one of the defendants. Dr. Owen Smoot assisted Dr. Snow in the surgical procedure but he was not made a party to this action.
After the operation Talbot was removed to the recovery room and after a period of time he was taken to his own room. Talbot had been in his own room for a period of approximately 30 minutes and had sufficiently recovered from the effects of the anesthetic to notice that his right arm felt numb. Before Talbot's awakening there was a period when he was lying on his right side with his arm under him, and during one period his forearm and hand were hanging over the side of the bed. Prior to surgery Dr. Reeder administered the anesthetic through a needle inserted in Talbot's right arm. Dr. Reeder testified as to his usual practice in placing padding under various bony prominences in order to avoid problems caused by weightbearing at such points. Dr. Reeder did not recall this particular operation. The record is silent as to what, if anything, went on while the plaintiff was in the recovery room and the length of time the plaintiff was there and who was in charge of him during that period.
After it was discovered that Talbot was having difficulty with his right arm, Dr. Snow referred him to a neurologist, Dr. Garth G. Myers. Dr. Myers testified that the probable cause of the damage to the nerves of the plaintiff's lower arm could have been caused by a lack of blood supply to those nerves. Dr. Myers further testified that this type of nerve injury was uncommon but that he was unable to arrive at any definitive cause for impairment of the blood supply in this case. Neither Dr. Myers nor Dr. Reeder, who also testified as an adverse party had an explanation for the cause of the plaintiff's disability.
The plaintiff does not claim that the defendants were guilty of specific acts or omissions amounting to negligence, but he does contend that he is entitled to the benefit of the doctrine of res ipsa loquitur on the basis that his injury would not have occurred without the negligence on the part of someone, and that he was within the control of the defendants when he suffered the injury. The defendants claim that the foundational facts are insufficient to permit application of the doctrine.
Our examination of the decisions of this court would indicate that the doctrine of res ipsa loquitur has not been applied in a malpractice case of this nature in this jurisdiction. However, prior decisions do not indicate that the doctrine has no application in this type of case, and we are of the opinion that if there is sufficient evidentiary foundation the doctrine should be applied.
In examining the facts of the case before us we are of the opinion that there is insufficient foundation on which to base the doctrine of res ipsa loquitur. The fact that plaintiff's disability resulted from an uncommon or rare occurrence does not relieve him of the burden of establishing causation. An inference of negligence cannot be permitted solely upon the basis that the plaintiff developed a rare complication while undergoing medical and surgical treatment. The doctrine of res ipsa loquitur has no application unless it can be shown from past experience that the occurrence causing the disability is more likely the result of negligence than some other cause. In the state of California *874 where the courts have applied the doctrine of res ipsa loquitur in a number of mal practice cases,[1] the decisions have laid down a requirement that the proof must show acts of negligence which could have caused the injury or disability. In the latest California case brought to our attention, Tomei v. Henning,[2] the Supreme Court of that State had this to say:
Since the res ipsa loquitur instruction permits the jury to infer negligence from the happening of the accident alone, there must be a basis either in common knowledge or expert testimony that when such an accident occurs, it is more probably than not the result of negligence.
The plaintiff seeks to recover as against each of the defendants by showing that at one time or another during his treatment at the hospital Dr. Snow, Dr. Reeder and the personnel of the hospital were in charge of him. The plaintiff does not attempt to show that the injury to his arm occurred while he was in the care of a particular defendant or defendants. The testimony produced by the plaintiff fails to show the thing, instrument or occurrence which caused the plaintiff's disability. Neither does the testimony show which of the defendants had the responsibility for the instrumentality which caused plaintiff's disability. The plaintiff's case in this respect fails to meet the standards for the application of the doctrine as set forth in prior decisions of this court.[3] In this case the plaintiff asks the court to extend the doctrine of res ipsa loquitur to a situation where a number of people had control or partial control of the plaintiff during surgery and thereafter, and where his injury may have occurred by the act or omission of any one of them, and outside the observation of the others. It would seem to us that such an extension to the doctrine would be unwarranted and it would be using the doctrine to accomplish a result without regard to its limitations.[4]
Our review of the evidence indicates that the trial court was correct in directing a verdict in favor of the defendants. The judgment of the lower court is affirmed. Costs to the defendants.
COLLISTER, J., concur.
HENRIOD, Justice (concurring).
I concur. In doing so I dissent from the dissent of Mr. Justice Ellett's thesis about multiple defendants in res ipsa loquitur cases.
In the first place, the dissent leans almost entirely on Ybarra v. Spangard,[1] which has been honored only for its dissonance with common law fundamentals. The other cases cited in the dissent either rely on such dissonance by citing this case, or have no pertinency here. That case, almost humorously referred to as the father of the "California res ipsa" rule[2] has been followed only by emotion,  not reason, logic or the application of legal principles. At best, and in all fairness it should be dubbed the father of a yet unborn child, conceived to father another unborn child,  liability without fault.
The dissent cites Horner v. No. Pac. Ben. Assn. in support of its position. It truly is not in support of Ybarra at all, since it did not involve multiple defendants, but only one,  alleged to have had complete control. The decision admitted the cause "could readily be proved," and that the doctrine of res ipsa loquitur did not apply.
*875 The dissent then cites Meyer v. St. Paul Mercury Indemnity Co.,[3] which relied on Ybarra, compounding the latter's error. It follows with Voss v. Bridwell,[4] which case with great largess, latitude and longitude had to do with the "entire, complete and exclusive supervision and control" of all of said defendants,  not the case here. The court said "We have not overlooked Ybarra * * *. There some of the language used in discussing res ipsa loquitur as applicable to medical malpractice cases is inconsistent with Kansas law and the case cannot be cited with full approval." In Beaudoin v. Watertown Memorial Hosp.,[5] the focal point was not so much res ipsa loquitur, but stated that the facts indicated that laymen could decide the matter without expert opinion, and that the defendants had complete control. That is not the case here, where the facts did not reflect who had control, but guessed about that phase of the case by simply saying somebody had control and that everybody joined in the action should pay. The other cases cited have similar infirmities that do not apply to the facts in the instant case.
One need only to read "Res Ipsa Loquitur: Tabula in Naufragio" by Seavey in 63 Harvard Law Review 643, 1950, and "Medical Malpractice: Misuse of Res Ipsa Loquitur" by O.C. Adamson, 46 Minnesota Law Review 1962, to catch the vulnerability of Mr. Justice Ellett's dissent and the inept citations mentioned.
Furthermore, I would like someone to tell me how the so-called res ipsa loquitur rule, which requires the defendant to come forward and explain his doings, can apply when the defendant is dead and buried,  as is the case here. I have apprehension in visualizing the omniscience of the Zions First National Bank's explaining how the sponge or something else innocently stayed in a patient's gullet.
Also, I would like to know how justifiably you can sue only five of ten known participants in a surgery, thereby relieving the other five, any of whom could have been the negligent one, and then get a judgment against the five multiple defendants who, possibly having the means financially to respond, are summoned as "multiple" defendants and all of whom get stuck for a money judgment, because it is out of their power or ability to explain. That was what happened in this case. The doctor, who apparently had an estate of substance, was sued in his casket. His assistant, apparently one without substance, was not joined as a defendant. In my humble opinion, if res ipsa liquitur is used to stagger a few it should stagger the whole caboodle,  not just the named joined participants,  and certainly not corpses that can't explain anything, including their own demises. All of which is reminiscent of Shakespeare's aside that what good men do is interred with their bones, but the evil they do lives on (with a paraphrase apology to the Bard).
Byrne v. Boadle, sired by one Pollock, was nothing but a dichotic, disarming and dissonant dictum that has led us to what many would hope to be retirement at birth and liability without fault. Freedom from fear, want, worry and woodsere, here we come, if the dissent in this case later should adhere. At the time of Byrne v. Boadle,  I think,  common law pleading was in effect. But now, any plaintiff, through counsel, can find all the facts under the discovery process and no longer is there any need for the doctrine of "Speak for yourself, John," except in an unusual case.
I say all this knowing that there are cases where the doctrine may be applicable,  but not here.
ELLETT, Justice (dissenting).
I dissent.
When we strip away the Latin verbiage, res ipsa loquitur means that in the ordinary experience of mankind and as a matter of common knowledge, certain accidents and mishaps are so unusual and rare that when *876 they do occur, there arises an inference from the happening thereof that somebody was negligent. The Latin expression is merely another way of saying that circumstantial evidence permits an inference of causal negligence.
In the instant case the plaintiff had allowed the defendants, acting as a team, to render him unconscious, and, therefore, he could not possibly know by what means or method his arm was paralyzed. All men know that an arm is not ordinarily paralyzed just by the patient's being anesthetized. Therefore, under the common knowledge and experience of mankind, one can infer that one or more of the defendants in this case, those guardians of the health and well-being of the unconscious patient, did something which should not have been done and which caused the injury. Whatever the cause of the paralysis, one or more of these defendants are in a far better position to know what it was than can the plaintiff possibly be. Whatever the instrumentality which caused the disablement, be it a needle in the nerve, the type of anesthetic used, or the position of the arm so that proper circulation of the blood was impaired, either on the operating table or in the recovery room, one or more of these defendants should know about it, while the plaintiff cannot possibly have that information. The prevailing opinion says: "The testimony produced by the plaintiff fails to show the thing, instrument or occurrence which caused the plaintiff's disability." It is in such a situation as this that the doctrine of res ipsa loquitur is necessary in order to prevent a miscarriage of justice, for the plaintiff cannot possibly produce that evidence. The opinion further says: "Neither does the testimony show which of the defendants had the responsibility for the instrumentality which caused plaintiff's disability." I suppose what is meant is that where multiple defendants have a part in a proceeding which causes harm, the plaintiff should not recover unless he can point an accusing finger at one particular individual and then tell what the specific act of negligence was. If this were the law, the rule of res ipsa loquitur would become completely sterile when two or more defendants are involved. That the law is to the contrary is shown by many cases, some of which will be cited below.
In Horner v. Northern Pacific Beneficial Association Hospitals, Inc., 62 Wash.2d 351, 382 P.2d 518 (1963), plaintiff was operated on for a hysterectomy, which was successfully performed. However, like the plaintiff in the instant case, she sustained a paralysis of her right arm. The defendant gave no explanation as to the cause of the injury except to show that it may have been produced by some form of trauma, pressure or traction while the patient was under anesthesia. The jury awarded a verdict to plaintiff, and the defendant appealed, claiming the trial court erred in instructing the jury under the rule of res ipsa loquitur.
The Washington Supreme Court discussed the principles involved in the rule and then said at page 524:
Surely, to emerge from abdominal surgery with a paralyzed arm is so extraordinary an occurrence within the general observations of mankind as to raise an inference of negligence that requires both an explanation and proof of nonnegligence to meet. It may well be that surgery to or manipulation of a part of the human anatomy will normally produce drastic symptoms in other parts of the body not related to the situs of such surgery or manipulation, but, if so, we may be sure that this could readily be proved.
There, as in the instant case, the plaintiff could not prove what the instrumentality was which caused the paralysis to her arm.
The verdict for plaintiff was affirmed.
The case of Meyer v. St. Paul-Mercury Indemnity Co., etc., et al., 61 So.2d 901 (La. App. 1952), involved a situation like the one now before this court. The plaintiff there sued an anesthetist, an oral surgeon, and a hospital for malpractice. During *877 the administration of the anesthetic and while plaintiff was unconscious, a front tooth of plaintiff was dislodged and found its way into her lungs. The trial court dismissed the complaint, and the plaintiff appealed. The court at pages 905 and 907 said:
We have no doubt at all that the doctrine of res ipsa loquitur has no application where, in the ordinary suit against a physician, a surgeon, or a dentist for malpractice, all that is shown is that the desired result was not accomplished. On the other hand, however, we think that where the complaint is not based on the failure to obtain satisfactory results, but is based on the charge that, during the rendering of the professional services, there occurred some untoward event, or some omission or act from which there resulted something not ordinarily found to result during such treatment or operation, the physician, or the surgeon, or the dentist may be required to show that such unusual occurrence did not result from negligence on his part.
* * * * * *
However, we are of the opinion that there are certain situations in which the doctrine may be applied, although there are two or more defendants any one of whom, through negligence, may have been responsible for the occurrence. We think that our Supreme Court clearly recognized this when, in Gerald v. Standard Oil Co. of Louisiana, 204 La. 690, 16 So.2d 233, 236, in which there were three defendants, the court said:
"* * * The controversy is one in which the doctrine of res ipsa loquitur is possible of application; * *".
(The Court of Appeals affirmed the trial court on the grounds that the defendants had done all that they could do to avoid harm and hence were not liable. In affirming the Court of Appeals, the Louisiana Supreme Court found it unnecessary to determine whether res ipsa loquitur applied to the facts of the case. Id., 73 So.2d 781.)
Voss v. Bridwell, 188 Kan. 643, 364 P.2d 955 (1961), was a case where plaintiff sued the anesthesiologist, the surgeon, and the resident physician for malpractice and relied upon the doctrine of res ipsa loquitur. The trial court sustained a demurrer of the anesthesiologist and overruled those of the other defendants. In holding the complaint good as to all defendants, the court at pages 971-972 said:
Application of the doctrine of res ipsa loquitur to plural defendants has been upheld many times under various circumstances. Worden v. Union Gas System [182 Kan. 686, 324 P.2d 501] and authorities cited therein. Here the facts presented are much stronger for application of the doctrine to plural defendants than were the facts in the Worden case, for here the petition is subject to the construction that a legal relationship exists among the several defendants which placed them in either actual or constructive control of the instrumentalities of anesthesia.
Beaudoin v. Watertown Memorial Hospital, 32 Wis.2d 132, 145 N.W.2d 166 (1966), was a case against a hospital and a surgeon by a plaintiff who had no blisters or burns on her buttocks before a vaginal operation but who had such blisters and burns after the operation. The trial court granted defendants' motion to dismiss at the end of plaintiff's case on the ground that there was no evidence of negligence against either defendant and that plaintiff was not entitled to the doctrine of res ipsa loquitur. In reversing the trial court and ordering a new trial, the Wisconsin Supreme Court at pages 168-169 said:
Before discussing the issue it should be noted that the trial court granted the motion of both defendants for a nonsuit. In passing on a motion for nonsuit the court must construe the evidence in the light most favorable to the plaintiff and must give the plaintiff the benefit of favorable inferences that can reasonably be deduced from the credible evidence. If the credible evidence most *878 favorable to plaintiff, or any reasonable inference drawn therefrom, is such that under any reasonable view the trier of the fact could find facts sufficient to constitute a cause of action, the motion for nonsuit should be denied.
* * * * * *
The trial court was of the opinion that the plaintiff had not identified the instrumentality or the agent that had caused her burns, and that because of the possibilities suggested by the evidence, such as a hot instrument, an allergy, diabetes, high blood pressure, or a soap solution used for cleansing purposes, the jury could only speculate as to causal negligence.
In this instance the evidence is undisputed that plaintiff did not have the blisters or burns before the operation. She was under the complete control of the doctor and the hospital from the time she left her room until the burns were discovered. She was given an anesthetic, was unconscious, and had no way of knowing what transpired during this period. The defendants had complete control of her body and the procedures, instruments, and agents that were used.
We are clearly of the opinion that a layman is able to conclude as a matter of common knowledge that blisters in the nature of second-degree burns in an area not directly related to the operative procedures do not ordinarily result if due care is exercised.
The fact that other possibilities are suggested by the evidence is not sufficient to take away from the plaintiffs the benefit of the doctrine of res ipsa loquitur.

The case of Ybarra v. Spangard, 25 Cal.2d 486, 154 P.2d 687 (1944), was similar to the instant case. There the plaintiff sued Dr. Spangard, the surgeon; Dr. Swift, the owner of the hospital; the anesthesiologist and the nurse employed by Dr. Swift. Plaintiff was operated on for appendicitis but upon awakening found that he had a severe pain in his right shoulder. The pain worsened, and ultimately he lost the use of his right arm. The plaintiff relied upon the doctrine of res ipsa loquitur. The defendants claimed that the doctrine could not apply to several defendants with a division of responsibility, for the reason that the injury might be a result of separate acts of two or more of the defendants. The court answered this contention as follows at page 690:
The argument of defendants is simply that plaintiff has not shown an injury caused by an instrumentality under a defendant's control, because he has not shown which of the several instrumentalities that he came in contact with while in the hospital caused the injury; and he has not shown that any one defendant or his servants had exclusive control over any particular instrumentality. Defendants assert that some of them were not the employees of other defendants, that some did not stand in any permanent relationship from which liability in tort would follow, and that in view of the nature of the injury, the number of defendants and the different functions performed by each, they could not all be liable for the wrong, if any.
* * * * * *
It may appear at the trial that, consistent with the principles outlined above, one or more defendants will be found liable and others absolved, but this should not preclude the application of the rule of res ipsa loquitur. The control at one time or another, of one or more of the various agencies or instrumentalities which might have harmed the plaintiff was in the hands of every defendant or of his employees or temporary servants. This, we think, places upon them the burden of initial explanation. Plaintiff was rendered unconscious for the purpose of undergoing surgical treatment by the defendants; it is manifestly unreasonable for them to insist that he identify any one of them as the person who did the alleged negligent act.
*879 The defendants also claimed, as the main opinion in the instant case holds, that plaintiff could not recover because he could not identify the instrumentality which caused the paralysis, and the court answered this contention, at pages 690-691, as follows:
* * * Here, again, there is a misconception which, if carried to the extreme for which defendants contend, would unreasonably limit the application of the res ipsa loquitur rule. It should be enough that the plaintiff can show an injury resulting from an external force applied while he lay unconscious in the hospital; this is as clear a case of identification of the instrumentality as the plaintiff may ever be able to make.
Another case involving multiple defendants is Frenkil v. Johnson, 175 Md. 592, 3 A.2d 479 (1939). In that case plaintiff sued Johnson and others for injuries resulting from a gas explosion. The question of exclusive possession was considered as it applies to res ipsa loquitur. At page 485 the court said:
It should be noted that the term "exclusive" when used to define the quantity of the possession, control or management by the defendant of the injurious agency is not employed in the sense that the possession, control or management must be several so that for the inference of defendant's negligence to be operative the defendant in possession, control or management must be singlar and never plural. The meaning of the term as here employed is that the possession, control or management must be exclusive as against all who do not have a concurrent joint possession, control or management in fact, either as joint actors, possessors or users in respect of the injurious agency; * * *.
To like effect is the case of Meny v. Carlson, 6 N.J. 82, 77 A.2d 245, 22 A.L.R. 2d 1160 (1950). In that case plaintiff sued the general contractor who furnished a defective scaffold and a subcontractor who built it. Plaintiff was injured when the scaffold collapsed. In speaking of the control required of two defendants so as to permit a finding of negligence under the doctrine of res ipsa loquitur, the court at page 250 said:
* * * The fact that the jury determined that both this defendant and the Carlson Company were in control of the scaffold creates no inconsistency. Control might have been in either or both of the defendants; in either case the doctrine of res ipsa loquitur was applicable. The word "exclusive" when used to define the nature of the control necessary to invoke the doctrine of res ipsa loquitur does not connote that such control must be several and the defendant singular and never plural. * * *
Another case treating of exclusive control where multiple defendants are involved is that of Biondini v. Amship Corporation, 81 Cal. App.2d 751, 185 P.2d 94 (1947). The court at page 104 said:
Harbor Ship argues that the doctrine is not applicable to it because the scaffold was not within its "exclusive" management and control. The law does not prohibit the application of the doctrine against two or more defendants where there is joint control. [Citations omitted.] It was for the jury to say whether either or both of these defendants had "control" of the scaffold, and if it should find that either or both had such control it should be instructed that the doctrine under discussion is applicable to that defendant or defendants.
Likewise, in Barb v. Farmers Insurance Exchange, 281 S.W.2d 297 (Mo. 1955), the question arose when plaintiff sued a tenant and his landlord for injuries received as a result of boxes falling upon her. The court held at pages 303-304:
In the instant case the jury found that Exchange, lessee, owned, controlled and had charge of stacking the boxes of supplies in the passageway. Defendant Building, lessor, also had the power to control the use of the passageway and to cause the removal of the hazard of the boxes stacked by Exchange in the *880 passageway over which passageway Building, as lessor, had reserved or retained exclusive control. Thus it would seem the two defendants, Exchange and Building, were in concurrent control in a legal sense and in a factual sense with incidental duties to plaintiff although their duties were of different factual bases in the circumstances surrounding the occurrence. Defendant-appellant Building, as stated, has urged the res ipsa loquitur doctrine if applied to it in this case, would place plaintiff in a mere [sic.] advantageous position as against defendant Building than if plaintiff had proved specific negligence of defendant Exchange. We can only say that plaintiff was obliged and entitled to rest her case upon the evidence which she could produce and, if such evidence supported the res ipsa loquitur inference of some kind of negligence of defendants, defendants, to whom explanatory proof was more accessible, then had the privilege and the burden of going forward with evidence tending to exculpate either or both of them of their negligence in causing plaintiff's injury. * * * Plaintiff did not know what caused the boxes to fall, and defendants Exchange and Building were, in the circumstances, in positions to have knowledge superior to plaintiff of the human cause of the occurrence. We are of the opinion plaintiff's case was submissible against Building as well as against Exchange on the theory of res ipsa loquitur.
In Waterbury v. Riss, 169 Kan. 271, 219 P.2d 673 (1950), survivors sued multiple defendants for wrongful death. The proof showed that the decedent's death was caused by an accident for which any or all of three or four parties were to blame. At page 685 the Kansas Supreme Court held:
* * * The allegations of the petition and the testimony of plaintiff disclose that Waterbury's death arose from an accident for which any or all of three or four parties were to blame. With the parties contending between each other as to which was to blame it would have been difficult if not impossible for plaintiff or her counsel before filing the petition to have made an inquiry and to have found the specific acts and claims of the respective defendants. For that reason it was not improper to predicate the action upon the doctrine of res ipsa loquitur. * * *
In speaking of the required control in res ipsa loquitur, the text material in 65A C.J.S. Negligence § 220.15 at 577 is as follows:
The term "exclusive," when used to define the quantity of the possession, control, or management by defendant of the injurious agency, required to render the res ipsa loquitur doctrine applicable is not employed in the sense that such possession, control, or management must be several and defendant singular and never plural. What is meant by the term is that the possession, control, or management must be exclusive against all who do not have a concurrent joint possession, control, or management in fact, either as joint actors, possessors, or users in respect of the injurious agency, or by way of representation. So the instrumentality causing the injury need not be under the exclusive control of a single person, and the doctrine may be applied against two defendants who have joint control of the instrumentality which caused the damage.
It thus appears to me that to apply the doctrine of res ipsa loquitur in this case and compel each of the defendants to make a showing that he was not to blame in causing the harm to plaintiff would be proper, as it is amply supported by adjudicated cases and by reason and common sense.
One further assignment of error by plaintiff should be mentioned. He complains because the trial court did not permit his expert witness to answer the following question: "If ordinarily, where due care *881 is used and proper practice followed during this type of lower back operation, does permanent damage to the nerves in the arm occur?" The trial court was of the opinion that the answer would be to a question which the jury would need to determine, and hence the answer could not be given by the witness.
Since the plaintiff was attempting to prove one of the required elements of his case in order to have the benefit of the doctrine of res ipsa loquitur, it would seem that the witness should have been permitted to answer. However, since in this particular case it is a matter of common knowledge that a paralyzed arm does not ordinarily result from a low back operation, I do not believe the error would have affected the result of the jury's verdict had the case gone to the jury. In any case where laymen cannot say that harm ordinarily does not occur except for negligence, then the expert should be permitted to answer such a question as was propounded in this case. The law is set out in Prosser on Torts (3rd Edition, Hornbook Series), § 39 at pages 218 and 221:
The requirement that the occurrence be one which ordinarily does not happen without negligence is of course only another way of stating an obvious principle of circumstantial evidence: that the event must be such that in the light of ordinary experience it gives rise to an inference that some one must have been negligent. On this basis res ipsa loquitur has been applied to a wide variety of situations, and its range is as broad as the possible events which reasonably justify such a conclusion. * * *
* * * * * *
In the usual case the basis of past experience from which the conclusion may be drawn that such events usually do not occur without negligence, is one common to the whole community, upon which the jury are simply permitted to rely. Even where such a basis of common knowledge is lacking, however, expert testimony may provide a sufficient foundation; * * *.
I would reverse the judgment and remand the case for a new trial.
CROCKETT, C.J., concurs in the dissenting opinion of ELLETT, J.
NOTES
[1] Ybarra v. Spangard, 25 Cal.2d 486, 154 P.2d 687, 162 A.L.R. 1258.
[2] Cal., 62 Cal. Rptr. 9, 431 P.2d 633.
[3] Barnhill v. Young Electric Sign Co., 13 Utah 2d 347, 374 P.2d 311; Wightman v. Mountain Fuel Supply Co., 5 Utah 2d 373, 302 P.2d 471.
[4] Funk v. Bonham, 204 Ind. 170, 183 N.E. 312; Wolf v. American Tract Soc., 164 N.Y. 30, 58 N.E. 31, 51 L.R.A. 241; Actiesselskabet Ingrid v. Central R. Co. of New Jersey, 2 Cir., 216 F. 72.
[1] 25 Cal.2d 486, 162 A.L.R. 1258, 154 P.2d 687 (1944).
[2] See Adamson, "Medical Malpractice: Misuse of Res Ipsa Loquitur," 46 Minn. Law Review (1962).
[3] 61 So.2d 901 (La. App. 1952).
[4] 188 Kan. 643, 364 P.2d 955 (1961).
[5] 32 Wis.2d 132, 145 N.W.2d 166 (1966).