CATHERINE C. BENNETT *vs.* VITUS A. FITZGERALD.

Suffolk.     October 3, 1933. — December 6, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Negligence,* Of dentist. *Evidence,* Competency. *Agency,* Admission by agent. *Dentist.*

At the trial of an action against a dentist for negligent treatment of the plaintiff, one of his patients, resulting in an infection of the plaintiff's jaw, there was evidence that the defendant, before extracting a tooth, injected a local anesthetic into the gum by means of a needle

and syringe; that he wore no gloves, did not sterilize the gum nor give the plaintiff a mouth wash before inserting the needle, and sterilized the needle only by passing it through a flame; that the needle broke off in the gum during the injection; and that the defendant, in extracting a piece of it from the gum, "just took . . . [an instrument] out of the drawer" and used it "to dig down into the gum and feel around there and get . . . [the broken piece] and pull it out." An expert testified that, before the injection of a local anesthetic, the gum and the needle should be sterilized and kept sterile until the injection is made, as otherwise there is grave danger of infection; that a needle cannot be sterilized thoroughly merely by passing it through a flame; and that, to prevent infection in extracting a piece of a broken needle from the gum, it is necessary to use a sterile instrument. *Held*, that a finding of negligence on the part of the defendant was warranted.

At the trial above described, there was evidence that the plaintiff suffered pain in his jaw after the extraction of his tooth and that a redness and swelling developed about two days later, which subsequently was diagnosed as osteomyelitis. The expert testified that in osteomyelitis redness and swelling over the part infected come within a few hours or a few days after the original infection; that "it was reasonable to believe" that the treatment given by the defendant caused the disease; and that the witness was prepared to say that such treatment was in fact the cause of the osteomyelitis, although "there is a possible chance," a "very remote chance," that there was a different cause. *Held*, that the evidence warranted a finding that the defendant's negligence was the cause of the disease from which the plaintiff suffered.

At the trial of an action against a dentist for negligent treatment of the plaintiff, one of the defendant's patients, statements, made by employees of the defendant while they were treating the plaintiff and relating to the treatment, were admissible.

CONTRACT OR TORT. Writ dated December 21, 1928.

The action was tried in the Superior Court before *Sisk*, J. Material evidence and exceptions saved by the defendant are described in the opinion. Subject to leave reserved, a verdict for the plaintiff in the sum of $25,000 was recorded. The judge reported the action for determination by this court.

*J. M. Russell*, for the defendant.

*R. G. Wilson, Jr.*, (*A. B. Nelson* with him,) for the plaintiff.

LUMMUS, J. The defendant excepted to the refusal of the trial judge to direct a verdict in his favor in an action for alleged negligent treatment, brought by a patient. The case comes up on report, after a verdict for the plaintiff.

The evidence warranted a finding of the following facts. The defendant was the proprietor of a dental office in Boston, where he employed several dentists.  One of them, on March 29, 1928, undertook to extract an aching tooth on the left side of the plaintiff's lower jaw.  There was no redness or swelling.  As a preliminary, the dentist prepared to inject a local anesthetic into the gum by means of a needle attached to a syringe.  He wore no gloves, and he sterilized the needle only by passing it through a flame.  He did not sterilize the gum, and gave no mouth wash.  On cross-examination the plaintiff testified that a mouth wash was given, but it was not made wholly clear whether the time of its administration was before or after the operation. Taken most favorably to the defendant, the plaintiff's testimony was merely conflicting on this point, and the jury could believe either statement.  *Sullivan* v. *Boston Elevated Railway,* 224 Mass. 405.  *Thibeault* v. *Poole,* 283 Mass. 480. On one of the insertions of the needle in the gum, it broke off, and had to be extracted by means of a long instrument which the dentist took out of a drawer and used "to dig down into the gum and feel around there and get it and pull it out."  Nothing was done with that instrument before it was used; "he just took it out of the drawer."  Then he injected some fresh anesthetic with a new needle and extracted the tooth, which showed no abscess or decay.

After the plaintiff went home she still suffered pain, and about two days later the left side of her face became red and swollen, notwithstanding the efforts of other employees of the defendant to remedy the trouble.  Shortly afterwards they took the plaintiff to an oral surgeon, who operated in an effort to reduce the swelling.  Her head and neck were much swollen, and her jaw was locked so that she could not open her mouth.  The greatest tenderness was at the middle of the left side of the lower jaw, where the tooth had been extracted.  After treatment for some days by the oral surgeon, she was taken to the Massachusetts General Hospital, where part of her jaw had to be removed. Her trouble was diagnosed as osteomyelitis, a diffusing pustular infection of the bone.

An expert called by the plaintiff gave the following testimony. In osteomyelitis redness and swelling over the part infected come within a few hours or a few days after the original infection. Before injecting a local anesthetic, the gum should be dried and tincture of iodine or other sterilizing agent should be applied, and the gum should be kept sterile until the intended operation is performed. The needle also should be sterilized and kept sterile until it is used, as otherwise there is grave danger of infection. A needle cannot be thoroughly sterilized merely by passing it through a flame. In extracting a broken needle from the gum, it is necessary to use sterile instruments in order to prevent infection. In answer to hypothetical questions which assumed a history of the case that could be found to be true upon the evidence, the expert declared that "it was reasonable to believe" that the dental treatment already described caused the disease. Later in the testimony, the trial judge recurred to these questions and answers, and the expert testified that he was prepared to say that the dental treatment assumed in the questions was in fact the cause of the osteomyelitis, although "there is a possible chance," a "very remote chance," that there was a different cause.

The dentist who extracted the plaintiff's tooth did not testify. The defendant introduced no evidence, but rested his case on the evidence for the plaintiff.

Upon the evidence already summarized, the jury could find that the defendant's servant negligently omitted ordinary proper precautions, bringing the case within the rule laid down in *Small* v. *Howard*, 128 Mass. 131, *Mason* v. *Geddes*, 258 Mass. 40, and *Ernen* v. *Crofwell*, 272 Mass. 172. The jury could find also that his negligence was the cause of the disease from which the plaintiff suffered. *De Filippo's Case, ante,* 531, and cases cited.

There is nothing in the defendant's exceptions to the admission of evidence. The evidence admitted over exception consisted of statements relating to the treatment of the plaintiff, made by the defendant's servants in the course of that treatment. The only statement of importance was

that of the dentist that the tooth extracted showed no abscess or decay. Statements so made were admissible. *Correira* v. *Boston Motor Tours, Inc.* 270 Mass. 88, 91. The plaintiff's exceptions have become immaterial.

*Judgment for the plaintiff on the verdict.*