**Jeanna M. DALLEY, Plaintiff and Appellant,**

v.

**UTAH VALLEY REGIONAL MEDICAL CENTER; IHC Hospitals, Inc., d/b/a Utah Valley Regional Medical Center; Howard R. Francis, M.D.; Kent R. Gamette, M.D.; Provo Obstetrics and Gynecology Clinic; and James P. Southwick, M.D., Defendants and Appellees.**

No. 880360.

Supreme Court of Utah.

April 19, 1990.

S. Rex Lewis, Leslie W. Slaugh, Provo, for plaintiff and appellant.

Norman J. Younker, Charles W. Dahlquist, M. Karlynn Hinnman, Sherene T. Dillon, for Utah Valley and IHC.

William W. Barrett, Heinz J. Mahler, Salt Lake City, for Dr. Francis, Dr. Gamette, and Provo Obstetrics.

Elizabeth Brennen, Elliott J. Williams, Salt Lake City, for Dr. Southwick.

HALL, Chief Justice:

This case is on appeal from a grant of defendants' motions for summary judgment in the Fourth Judicial District Court of Utah County. Plaintiff filed a complaint asserting a medical malpractice cause of action and based her complaint upon the doctrine of res ipsa loquitur. Because she did not produce any expert witnesses with regard to causation, the trial court ruled that she had failed to show sufficient foundation for the application of res ipsa loquitur. We reverse.

## FACTS

On February 5, 1985, plaintiff Jeanna M. Dalley underwent an elective caesarean section operation at Utah Valley Regional

Medical Center. Her attending physician was Howard R. Francis, M.D., who was assisted by Kent R. Gamette, M.D., and various other nurses. Her anesthesiologist was James P. Southwick, M.D.

On February 6, 1985, the day after the operation, Dr. Francis observed a burn on the calf of plaintiff's right leg about the size of a half-dollar. Dr. Francis made the following notation in the hospital chart: "Does have what appears to be a 4–5 day old burn rt. calf—pt. did not know about it. It is asymptomatic."

Plaintiff alleges that the burn was not present immediately before the surgery and that it was inflicted in the operating room. The record reflects that a nurse noticed the burn while transporting plaintiff from the operating room following the operation. Skin grafts were eventually required to repair the burn, and plaintiff states that she suffered physical and emotional damages as a result of the incident.

On January 28, 1987, plaintiff filed her complaint. Between April 13, 1988, and June 10, 1988, all named defendants filed motions for summary judgment. On June 14, 1988, plaintiff filed a motion *in limine* seeking the trial court's determination that the injury was of a type that does not occur in the absence of negligence and that expert testimony was therefore unnecessary.

All of the motions were argued before the trial court on July 22, 1988, and on August 1, 1988, the trial court issued a ruling granting all of defendants' motions for summary judgment. The trial court based its granting of defendants' motions on plaintiff's failure to produce expert medical testimony to establish sufficient foundation for the application of the doctrine of res ipsa loquitur and to establish what instrumentality caused the burn. The court's order granting defendants' motions and denying plaintiff's motion *in limine* was entered on August 18, 1988.

A motion for summary judgment is granted when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.[1] Because summary judgment is a conclusion of law, we give no deference to the trial court's conclusions of law but review those conclusions for correctness.[2]

The issues presented on appeal are as follows: (1) Is it within the common knowledge of laypersons that a woman who goes into an operating room for a caesarean section with no burn on her leg and emerges with a burn would not have received the burn in the absence of negligence? (2) Where several persons are involved in an operation and the patient is burned by an unknown instrumentality, may all of the persons involved in the operation be held liable? (3) May a person suffer a negligently inflicted physical injury and be compensated for the resulting mental trauma?

## I. NEED FOR AN EXPERT WITNESS

The first issue presented in this appeal is whether it is necessary for a medical malpractice plaintiff who is asserting the doctrine of res ipsa loquitur to obtain an expert witness to establish negligence and causation. The general rule is that a person asserting a medical malpractice claim must prove (1) the standard of care required of physicians under similar circumstances practicing in the same field or specialty,[3] (2) that the applicable standard of care was breached, (3) that the injury to the plaintiff was proximately caused by the defendant's negligence, and (4) that damages occurred as a result of defendant's breach of duty.[4] To establish the standard of care required of a physician in a particular field, breach of that standard, and proximate cause, the plaintiff is generally required to produce an expert witness who is acquainted with the

1. *Utah State Coalition of Senior Citizens v. Utah Power & Light Co.,* 776 P.2d 632, 634 (Utah 1989).

2. *Grayson Roper Ltd. v. Finlinson,* 782 P.2d 467, 470 (Utah 1989); *Creer v. Valley Bank & Trust Co.,* 770 P.2d 113, 114 (Utah 1988).

3. *Farrow v. Health Services Corp.,* 604 P.2d 474, 476–77 (Utah 1979); *Swan v. Lamb,* 584 P.2d 814, 817 (Utah 1978).

4. *See generally Huggins v. Hicken,* 6 Utah 2d 233, 310 P.2d 523 (1957).

standards of care in the same or a similar field as the defendant doctor.[5] Res ipsa loquitur is an exception to the general rule.

■ The doctrine of res ipsa loquitur is an evidentiary doctrine created to help a plaintiff establish a prima facie case of negligence using circumstantial evidence.[6] Res ipsa loquitur requires the plaintiff to establish an evidentiary foundation which includes the following:

> (1) ... [T]he accident was of a kind which in the ordinary course of events, would not have happened had the defendant(s) used due care, (2) the instrument or thing causing the injury was at the time of the accident under the management and control of the defendant, and (3) the accident happened irrespective of any participation at the time by the plaintiff.[7]

The first requirement to establish negligence under the doctrine of res ipsa loquitur is to show that the injury was of a kind which in the ordinary course of events would not have happened had the defendants used due care. On an appeal from a granting of a motion for summary judgment, we look at the facts most favorable to the party opposing the motion, in this case, plaintiff.[8] We thus presume that the burn on plaintiff's leg was not present when she went into the operating room but was present when she emerged.

It would appear that it is within the knowledge and experience of laypersons that a woman with a healthy leg does not usually go into an operating room for a caesarean section operation and emerge with a burn on her leg without some occurrence of negligence. This type of inference does not require expert testimony concerning the standard of care and breach of that standard.

Another requirement to establish the evidentiary foundation of res ipsa loquitur is that plaintiff prove that she did not contribute to the injury suffered. Again, it would appear that it is within the general experience and knowledge of laypersons that a woman who is under an epidural anesthetic rendering her essentially paralyzed from the waist down during the caesarean section delivery of a child generally is not in a position to negligently or intentionally burn herself on the back of her right calf. We conclude that laypersons are capable of discerning whether the injury occurred irrespective of any participation by the plaintiff.

The final element of res ipsa loquitur that must be proved by plaintiff is that the instrument or thing that caused the injury was under the management and control of defendants. Thus, causation becomes the crucial issue.

In *Anderton*, this Court stated:

> [R]es ipsa loquitur is an evidentiary doctrine aiding in the proof of negligence; it has no bearing on the issue of causation, which must be separately and independently established.... *Res ipsa loquitur* does not relieve plaintiff of [the obligation of proving causation]; rather, it permits him, in lieu of linking his injury to a specific act on defendant's part, to causally connect it with an agency or instrumentality, under the exclusive control of the defendant, functioning in a manner which, under the circumstances, would produce no injury absent negligence.[9]

Defendants rely on *Talbot v. Dr. W.H. Groves' Latter–Day Saints Hospital, Inc.*[10] to claim that in order for plaintiff to maintain the causation aspect of her negli-

5.  *See, e.g., Burton v. Youngblood*, 711 P.2d 245 (Utah 1985); *Anderson v. Nixon*, 104 Utah 262, 139 P.2d 216 (1943); *Edwards v. Clark*, 96 Utah 121, 83 P.2d 1021 (1938); *Baxter v. Snow*, 78 Utah 217, 2 P.2d 257 (1931).

6.  *Anderton v. Montgomery*, 607 P.2d 828, 833–34 (Utah 1980); *Robinson v. Intermountain Health Care*, 740 P.2d 262, 264 (Utah Ct.App.1987).

7.  *Moore v. James*, 5 Utah 2d 91, 96, 297 P.2d 221, 224 (1956); *see also Nixdorf v. Hicken*, 612 P.2d 348, 352–53 (Utah 1980).

8.  *Utah State Coalition of Senior Citizens*, 776 P.2d at 634; *Geneva Pipe Co. v. S & H Ins. Co.*, 714 P.2d 648, 649 (Utah 1986).

9.  607 P.2d at 834.

10.  21 Utah 2d 73, 440 P.2d 872 (1968).

gence claim against any defendant, she must show the precise instrumentality that caused her injury and the specific individuals who controlled the instrumentality. In *Talbot*, the plaintiff entered the hospital for a back operation. When Talbot was recovering in his room, he experienced numbness in his right arm. The record revealed that before Talbot had regained consciousness after the operation, he was lying on his right side with his arm under him and apparently there was a period when his forearm and hand were hanging over the bed. Expert testimony in the case could not identify what the cause of the injury was and left open the possibility of non-negligence causes.

In holding that *Talbot* did not establish a sufficient foundation to assert the res ipsa loquitur doctrine, this court stated:

> The plaintiff does not attempt to show that the injury to his arm occurred while he was in the care of a particular defendant or defendants. The testimony produced by the plaintiff fails to show the thing, instrument or occurrence which caused the plaintiff's disability.... In this case the plaintiff asks the court to extend the doctrine of *res ipsa loquitur* to a situation where a number of people had control or partial control of the plaintiff during surgery and thereafter, and where his injury may have occurred by the act or omission of any one of them, and outside the observation of the others.[11]

The present case is distinguishable from *Talbot* in a number of ways. First, the plaintiff in this case alleges that her injury took place in a very confined place—the operating room—while she was under the control of a defined number of persons—the doctors and staff of the operating room. Second, *Talbot* actually went to trial, where testimony was presented as to other possible non-negligence causes of the injury. In the present case, defendants were granted summary judgment solely on

the basis of the defendant doctors' affidavits claiming that they were not negligent and did not know what could have caused the burn.

The very purpose of the doctrine of res ipsa loquitur is to allow a plaintiff who may have been unconscious or incapacitated during an operation the opportunity to establish negligence and causation by circumstantial evidence. A plaintiff who is under anesthesia or otherwise incapacitated can identify neither the instrumentality nor the person(s) in control of the instrumentality. To place this burden of proof upon a plaintiff is to require the impossible. Similarly, requiring plaintiff to present speculative expert testimony as to the instrumentalities in an operating room that could possibly cause the injury does not add any probative value to the circumstantial evidence that something in the operating room caused the burn and that the operating room was under the exclusive control of defendants.

A better-reasoned approach would be to allow a plaintiff to use either of two methods to prove causation: A plaintiff may prove causation either by tracing the injury "to a specific instrumentality or cause for which the defendant was responsible" or by showing "that the defendant was responsible for all reasonably probable causes to which the accident could be attributed."[12] Because plaintiff cannot prove the specific instrumentality or cause of the burn she suffered, she must show that defendants were responsible for all reasonably probable causes. Many cases have allowed the plaintiffs to make such a showing through circumstantial evidence by using res ipsa loquitur.

In *Shannon v. Jaller*,[13] the plaintiff went into surgery for removal of a calcification on his right shoulder. Following the surgery, he experienced the inability to extend the fingers of his right hand, restrictive movement in his right wrist, numbness

---

11. *Id.* at 85–86, 440 P.2d at 874.

12. W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on the Law of Torts* § 39, at 248 (5th ed. 1984 & Supp.1988).

13. 6 Ohio App.2d 206, 217 N.E.2d 234 (1966).

in his right hand, and soreness and discomfort in his right hand and wrist. The defendant doctor objected to the plaintiff's petition and moved for a more definite statement because the plaintiff had failed to identify the instrumentality that caused the injury. The Ohio Court of Appeals held:

> Where a defendant is in complete control of a procedure which results in injury and he alone has the means of knowing what occurred, it would appear to do. violence to the principle behind the rule of *res ipsa loquitur* to require [the] plaintiff to allege how and by what physical means his injury occurred.[14]

The *Shannon* court further held that the term "instrumentality," when used in connection with a res ipsa loquitur case, has a much broader meaning than a specific object or thing and could include an agency or occurrence.[15]

In *Gormley v. Montana Deaconess Hospital*,[16] the plaintiff entered the hospital for a vaginal hysterectomy. After the operation and while she was recovering in her room, she experienced two grand mal seizures. Subsequently, it was discovered that she had a broken arm, and she sued the hospital for damages. The defendant objected to the fact that the court did not require a jury instruction that made it incumbent upon the plaintiff to show what thing or instrumentality caused the injury. The court upheld the jury's verdict for the plaintiff, stating:

> The plaintiff was not required to establish the THING that caused the injury. If such a requirement were added to this case, plaintiff would not be able to recover although it was shown that she suffered an injury while a patient in the hospital. Common sense tells us that such an injury cannot take place without negligence on someone's part.[17]

In *Schaffner v. Cumberland County Hospital System, Inc.*,[18] the plaintiff, a minor, entered the operating room of the defendant hospital to have her adenoids removed and drainage tubes placed in her ears. When she returned to her room after surgery, a "greenish mark" was noticed on her right hand. The mark was diagnosed as a burn and eventually required skin grafts which resulted in scarring. In reversing summary judgment granted to the defendants, the *Schaffner* court stated:

> Defendants argue that plaintiff's inability to identify the instrumentality with which her injury was inflicted and her inability to identify a single defendant in exclusive control thereof preclude application of the doctrine. This literal interpretation of the requirement does not accord with the purpose of the *res ipsa* doctrine or with the case law which has applied it.
>
> ... Focus is properly placed on the presence or absence of defendant's control, and such control often may be demonstrated without identifying the instrumentality involved. Thus, when it is established that defendant is in control of the circumstances leading to plaintiff's injury, plaintiff's failure to identify an instrumentality is not dispositive.[19]

A similar result was reached in *Ybarra v. Spangard*,[20] where the plaintiff entered the hospital for an appendectomy and awoke from the anesthesia with a sharp pain about halfway between her neck and right shoulder. The pain grew increasingly worse, to the point where the plaintiff developed paralysis and atrophy of the muscles around the shoulder. The defendant doctors and staff presented two defenses:

> (1) [T]hat where there are several defendants, and there is a division of responsibility in the use of an instrumentality causing the injury, and the injury might have resulted from the separate act of

---

14. *Id.* at 209, 217 N.E.2d at 236.

15. *Id.*

16. 149 Mont. 12, 423 P.2d 301 (1967).

17. *Id.* at 305.

18. 77 N.C.App. 689, 336 S.E.2d 116 (N.C.Ct.App. 1985).

19. *Id.* at 120.

20. 25 Cal.2d 486, 154 P.2d 687 (Cal.1945).

either one of two or more persons, the rule of *res ipsa loquitur* cannot be invoked against any one of them; and (2) that where there are several instrumentalities, and no showing is made as to which caused the injury or as to the particular defendant in control of it, the doctrine cannot apply.[21]

In reversing the trial court's judgment of nonsuit, the *Ybarra* court held:

The control at one time or another, of one or more of the various agencies or instrumentalities which might have harmed the plaintiff was in the hands of every defendant or of his employees or temporary servants. This, we think, places upon them the burden of initial explanation. Plaintiff was rendered unconscious for the purpose of undergoing surgical treatment by the defendants; it is manifestly unreasonable for them to insist that he identify any one of them as the person who did the alleged negligent act.

The other aspect of the case which defendants so strongly emphasize is that plaintiff has not identified the instrumentality any more than he has the particular guilty defendant. Here, again, there is a misconception which, if carried to the extreme for which defendants contend, would unreasonably limit the application of the *res ipsa loquitur* rule. It should be enough that the plaintiff can show an injury resulting from an external force applied while he· lay unconscious in the hospital; this is as clear a case of identification of the instrumentality as the plaintiff may ever be able to make.[22]

■ Under the facts of the present case, where plaintiff is virtually incapacitated and where the injury occurred in a very confined and sterile environment such as an operating room, we hold that it is within the common experience and knowledge of laypersons that whatever caused the burn to plaintiff's leg was, by all reasonable · probability, inside the operating room. We also hold that it is within the common experience and knowledge of laypersons that whatever caused the burn was within defendants' control. The thing speaks for itself.

■ This case is unique from many of the cases cited by either party in that plaintiff's injury was an external traumatic wound that apparently occurred in a very confined environment with a defined number of possible defendants. Plaintiff is not required to show what the exact cause of the burn was because the purpose of res ipsa loquitur is to compel those who were awake, aware, and in control of all possible injuring instrumentalities to explain the occurrence. Once plaintiff has utilized res ipsa loquitur to establish the inference that no one but defendants could have had control of the instrumentality that caused the injury, the burden of going forward with the evidence shifts to defendants to show that the injury could have been caused by a person or instrumentality outside of defendants' control.[23]

If defendants can offer evidence or some other reasonable explanation of how the injury may have taken place, then it is up to the finder of fact to decide whether plaintiff has established all of the elements of negligence, including causation, by a

---

**21.** *Id.* at 688–89.

**22.** *Id.* at 690–91; *see also Carranza v. Tucson Medical Center,* 135 Ariz. 490, 662 P.2d 455 (Ct. App.1983); *Wiles v. Myerly,* 210 N.W.2d 619 (Iowa 1973); *Frost v. Des Moines Still College of Osteopathy and Surgery,* 248 Iowa 294, 79 N.W.2d 306 (1956); *McCann v. Baton Rouge General Hospital,* 276 So.2d 259 (La.1973); *Beaudoin v. Watertown Memorial Hospital,* 32 Wis.2d 132, 145 N.W.2d 166 (1966).

**23.** *See Dierman v. Providence Hospital,* 31 Cal.2d 290, 188 P.2d 12, 14 (Cal.1947) (judgment notwithstanding the verdict entered against defen-

dants because the burden of going forward with the evidence was upon them and defendants were the only persons with the ability to produce exculpatory evidence but failed to do so); *Bergeron v. Houma Hospital Corp.,* 514 So.2d 1192, 1196 (La.Ct.App.1987) (res ipsa loquitur allows an inference of negligence); *Gormley,* 149 Mont. 12, 423 P.2d at 305–06 (1967) (once plaintiff established foundation for res ipsa loquitur, defendant had the burden of an exculpatory explanation); *Siegler v. Kuhlman,* 3 Wash. App. 231, 236, 473 P.2d 445, 449 (1970) (res ipsa loquitur permits an inference of negligence).

preponderance of the evidence.[24] The only evidence offered by defendants to show that they were not in control of the instrumentality that caused the burn were affidavits from the physicians stating that neither one caused the burn or knew of anything in the operating room that could have caused the burn.

■ Where a plaintiff receives an injury to a healthy part of the body not involved in the operation in an operating room controlled by known defendants, res ipsa loquitur establishes a rebuttable inference of negligence and causation that puts the burden of going forward with the evidence upon those persons who were awake, aware, and conscious at the time of the injury, who were responsible for the plaintiff's safety at a time when he or she was not in a position to assume that responsibility. Res ipsa loquitur infers causation, and therefore a material issue of fact exists that must be presented to the trier of fact. If plaintiff prefers to rest upon the inference of cause established by res ipsa loquitur, then that is a tactical decision that should not be short-circuited by summary judgment. Summary judgment should not have been granted to defendants.

## II. MULTIPLE–DEFENDANT LIABILITY

■ The second issue on appeal is whether multiple defendants may be held liable under the doctrine of res ipsa loquitur, thus relieving plaintiff of showing that particular defendants were involved. The very purpose of the doctrine of res ipsa loquitur is to allow a plaintiff who is unaware of the circumstances of his or her injury to establish the elements of negligence, including the possible defendants.

Consistent with our opinion above, we hold that where the foundation of res ipsa loquitur is established, all defendants who are charged with the safety of a helpless patient may be held liable where the only possible instrumentalities that could cause injury were within the defined area of an operating room under the control of all defendants and where the injury occurred to a part of the plaintiff's body not involved in the operation itself. Without some further explanation by defendants of how plaintiff was injured, they are all considered in control of the instrumentality, including the hospital[25] and the anesthesiologist.[26]

If any defendant can come forward with a conclusive exculpatory statement or explanation of how the injury occurred, then the doctrine of res ipsa loquitur will not apply because there is no longer a need for an inference of negligence or causation.[27] The justification for placing the inference of negligence and cause upon defendants in lieu of an explanation of how the injury occurred arises from the necessity to protect the rights of an innocent and helpless patient. The justification also arises from the tendency of the medical profession, as with many professions, not to testify against one another.[28]

## III. DAMAGES FOR EMOTIONAL DISTRESS

■ Plaintiff claims that she is entitled to damages for emotional distress arising from the injuries she suffered and cites *Johnson v. Rogers*[29] to support her claim. We will address this issue because it has been briefed by both parties and is likely to be raised by plaintiff on remand.[30]

Assuming, arguendo, that plaintiff is successful in the trial below, the facts of

24. *See generally Brumberger v. Burke,* 56 F.2d 54 (1932); *Bennett v. Fitzgerald,* 284 Mass. 535, 188 N.E. 247 (1933); *Anderson v. Nixon,* 104 Utah 262, 139 P.2d 216 (1943).

25. *Carranza,* 662 P.2d at 457–58; *Ybarra,* 154 P.2d at 691; *Wiles,* 210 N.W.2d at 629–31; *Frost,* 79 N.W.2d at 314; *Gormley,* 423 P.2d at 306.

26. *Wiles,* 210 N.W.2d at 629–31; *Ybarra,* 154 P.2d at 691.

27. *Siegler,* 473 P.2d at 450.

28. Prosser & Keeton, *supra* note 12, at 253.

29. 763 P.2d 771 (Utah 1988).

30. R. Utah S.Ct. 30(a); *see also Anderson v. Utah County Bd. of County Comm'rs,* 589 P.2d 1214, 1216 n. 2 (Utah 1979); *Lopes v. Lopes,* 30 Utah 2d 393, 395, 518 P.2d 687, 688 (1974).

the present case are easily distinguished from *Johnson* and prevent her from collecting damages for negligent infliction of emotional distress. In *Johnson*, the plaintiff and his eight-year-old son were struck by a truck operated by the defendant. This court upheld the award for negligently inflicted emotional damages based upon the Restatement (Second) of Torts § 313 (1965),[31] which states:

> (1) If the actor unintentionally causes emotional distress to another, he is subject to liability to the other for resulting illness or bodily harm if the actor
>
> (a) should have realized that his conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person, and
>
> (b) from facts known to him should have realized that the distress, if it were caused, might result in illness or bodily harm.
>
> (2) The rule stated in Subsection (1) has no application to illness or bodily harm of another which is caused by emotional distress arising solely from harm or peril to a third person, unless the negligence of the actor has otherwise created an unreasonable risk of bodily harm to the other.

In the present case, plaintiff is the only person injured, and because of her condition, she did not witness the injury itself. The possible mental and emotional damages suffered by plaintiff as a result of a personal physical injury are compensable through special damages and general damages for pain and suffering[32] "covering not only the pain associated with the injury but also the mental reaction to that pain and to the possible consequences of the injury."[33]

The difference in the two theories is that awards for pain and suffering result when the emotional trauma arises from the physical injury and awards for negligently inflicted emotional distress arise when physical or mental illness results from the emotional trauma itself. *Johnson v. Rogers* applies under the later scenario.

## CONCLUSION

Under the facts of this case, the trial court erred in awarding summary judgment to defendants on the basis of plaintiff's failure to present evidence as to the instrumentality that caused the injury and the specific person(s) exercising control over the instrumentality; multiple defendants may be held liable; and a separate cause of action for negligently inflicted emotional distress would not apply to the facts of this case as they now stand.

We vacate the order of summary judgment granted to defendants and remand for proceedings consistent with this decision.

HOWE, Associate C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.

---

**31.** Because Justice Durham's majority opinion discussed more than one theory of recovery under negligently inflicted emotional distress, the majority of justices concurred with Justice Zimmerman on adopting the Restatement theory. *See Johnson,* 763 P.2d at 785.

**32.** *DiMare v. Cresci,* 58 Cal.2d 292, 373 P.2d 860, 23 Cal.Rptr. 772 (1962); *Green v. Floe,* 28 Wash.2d 620, 183 P.2d 771 (1947).

**33.** 22 Am.Jur.2d *Damages* § 251 (1988).